**Robert William ARNOLD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09 81 142 CR.**

Court of Appeals of Texas, Beaumont.

June 23, 1982.

George Morris, Conroe, for appellant.

James Keeshan, Dist. Atty., Conroe, for appellee.

OPINION

KEITH, Justice.

Defendant was convicted of sexual abuse of a child as defined in *Tex.Penal Code Ann. Sec. 21.10(a)*, and the jury fixed his punishment at the statutory maximum, confinement for twenty years and a fine of $10,000.

There is no challenge to the sufficiency of the evidence and there is no need to set out the sordid facts supporting the conviction.

The single ground of error relates to testimony given by a federal probation parole officer, Frank Flanagan, as to appellant's bad reputation. While the indictment contained an enhancement paragraph alleging that appellant had been convicted in the federal court in Youngstown, Ohio, of kidnapping, the State made no attempt to prove such fact at the punishment hearing. Instead, Flanagan was the only witness who gave testimony, and it was very short.

In the absence of the jury, the parties examined Flanagan to determine the admissibility of his testimony. It was shown at that time, while Flanagan knew appellant, presumably as a person in his charge, he had never been to Youngstown and had no knowledge of his general reputation in that community. The pertinent testimony is set out in the margin.[1]

The trial judge then took a turn at questioning the witness:

"THE COURT: (To the witness) Your opinion of reputation is based on things that you have heard said about the defendant in the community of Youngstown, Ohio, or is this based upon some written documents involving some prior legal problems he may have had?

"THE WITNESS: Your Honor, it's based on written documents as to prior legal problems which are public information."

At the conclusion of the hearing outside the presence of the jury, the trial judge expressed doubt as to the qualification of Flanagan to testify to reputation,[2] but overruled appellant's objection.[3] In the presence of the jury, State's counsel asked Flanagan if, while he had known appellant, he had come to know his general reputation "in the community in which he lived and resides for being a peaceful and law-abiding citizen." The witness answered: "I have been provided with information with regard to his past reputation." Appellant's general objection was sustained.

However, State's counsel continued:

"Q. Answer the question yes or no.

"A. Yes.

"Q. Is that reputation good or is it bad?

"A. It's bad."

Appellant made no objection to the ultimate answer nor did he seek any other relief through cross-examination or otherwise.

At first blush, it would appear that the hearsay objection was untenable because of the general rule expressed in *Smith v. State*, 162 Tex.Cr.R. 237, 283 S.W.2d 936, 938–939 (1955),

"One's general reputation is what is generally said about him in the community in which he lives and is necessarily based upon hearsay."

See also, *1A, Texas Practice, Law of Evidence § 1325, at 501 (Ray, 3d Ed. 1980).*

■ But, in the context in which the question arises here, the hearsay objection has merit. Flanagan told the trial judge that his testimony was based "on written documents as to prior legal problems . . . ." Since the written documents do not appear in our record, we have no knowledge of the nature thereof. Obviously, whatever did appear there constituted statements made out of court which were offered for the truth thereof. As such, the testimony was

---

1. "Q. Do you have a personal knowledge yourself of his general reputation in the community in which he lived among the people that know him best?
"A. No.
"Q. You do not have?
"A. No personal knowledge, no.
"Q. No personal knowledge at all?
"A. I simply have information provided me from that community.
"Q. That would be hearsay from correspondence or something of that sort.
"A. That's right.

"Q. Is this his general reputation or does it cite a particular case?
"A. It concerns two particular cases, sir."

2. THE COURT: ". . . I'm not so sure he qualifies on that—reputation."

3. The objection was that the testimony was hearsay, based upon information received through the mail in connection with his official duties as a parole officer and "it's actually based on specific acts rather than general reputation."

hearsay. *Ex parte Martinez*, 530 S.W.2d 578, 580 (Tex.Cr.App.1975), quoting language which now appears in *Texas Practice*, supra, *Evidence § 781, at 2.*

■ Hearsay evidence is not admissible even though no better evidence is to be obtained. *Ex parte Thrash*, 167 Tex.Cr.R. 409, 320 S.W.2d 357, 359 (1959). See also, *Salas v. State*, 403 S.W.2d 440 (Tex.Cr.App. 1966), discussing the textbook definition of hearsay evidence.

State's counsel argues that since reputation may not be based on personal knowledge, it is necessarily hearsay evidence. We agree. But, when counsel argues that Flanagan's testimony was admissible under the rationale of *Aguilar v. State*, 444 S.W.2d 935, 938 (Tex.Cr.App.1969), we disagree. As noted in *Aguilar*, the reputation witness "testified that he had known appellant for some seven years and had discussed his reputation with others in Harris County." Flanagan had never been to Youngstown nor did he say that he had discussed reputation with others in such city. All he had was a written document from some undisclosed source containing, according to Flanagan, statements pertaining to "prior legal problems."

State's counsel also contends that the Court in *Aguilar*, supra, "did not specifically negative (sic) the use of written information as a part of the basis of reputation testimony." The statement is true; but there was no necessity for the Court to make such a holding. Officer McManess (in *Aguilar*) "had discussed [Appellant's] reputation with others . . . ."

Under the authorities herein discussed, the admission of Flanagan's reputation testimony constituted error and we now turn to a consideration of the State's alternative position that such error was harmless. In so doing, we readily subscribe to and agree with this statement taken from *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340, 345 (1972), that " '[a] defendant is entitled to a fair trial but not a perfect one.' "

■ In considering the question of harmless error, the general rule is that a judgment will not be reversed because of a trial error which did not injure the defendant; rather, the question is whether there is a reasonable possibility that the incident complained of might have contributed to the conviction or the punishment assessed by the jury. *4 Teague, Texas Crim. Practice Guide § 90.06[2][e] (1982); Clemons v. State*, 605 S.W.2d 567, 571 (Tex.Cr.App. 1980).

■ We are of the opinion that since Flanagan had never discussed appellant's reputation with any members of the Youngstown community, and was testifying from an unidentified written instrument relating to "two particular cases," his testimony "concerning the accused's reputation for being a peaceful and law abiding citizen would be nothing more than an inadmissible opinion." *Mitchell v. State*, 524 S.W.2d 510, 513 (Tex.Cr.App.1975).

The error found in *Mitchell* was harmless because the inadmissible evidence was "extremely terse" *and* three other witnesses gave identical evidence without objection. Here, only Flanagan testified at the punishment hearing and while his testimony was brief, it was not terse.

Flanagan made it abundantly clear to all present that his information came from the written report which he had read. We turn now to *Watson v. State*, 605 S.W.2d 877, 879 (Tex.Cr.App.1979), where the Court wrote:

> " 'Talk[ing] to any police officers with respect to this defendant' does not convey that the officers knew anything about the appellant. *'Read[ing] any documents with respect to this defendant' is in no way equivalent to discussing his reputation in his community.* The appellant's objection to the predicate should have been sustained." (emphasis supplied)

State's counsel seeks comfort in the *Watson* language because the error there was held to be harmless, a matter to which we now return.

■ At the penalty phase of the trial, the reputation of the accused prior to the trial

is in issue. *Wallace v. State*, 501 S.W.2d 883, 885 (Tex.Cr.App.1973), and authorities therein cited.

In this case, there was an abundance of evidence, including appellant's voluntary confession, which established his guilt beyond peradventure of doubt; and, it is appropriate to note that there was no type of defense interposed nor any ameliorating circumstances disclosed. In short, the evidence shows appellant's guilt of the infamous crime against nature perpetrated upon a nine-year-old boy.

Thus, there can be no contention that the improperly admitted evidence contributed to the conviction; indeed, the jury did not hear the inadmissible evidence until after it had found appellant guilty. But, our inquiry does not end here. We must decide whether or not the admission of such evidence was harmful in regard to punishment. *Clemons v. State*, supra; *Jordan v. State*, 576 S.W.2d 825, 830 (Tex.Cr.App. 1978).

It is appropriate to consider the range of punishment fixed by the Legislature for the crime. Sexual abuse of a child, as defined in *Tex.Penal Code Ann. Sec. 21.10(a)* is a felony of the second degree. The punishment upon conviction may be imprisonment "for any term of not more than 20 years or less than 2 years", and in addition to imprisonment, an individual may be "punished by a fine not to exceed $10,000." *Appellant received the maximum term of imprisonment and the maximum fine.*

Under our record, the sentence assessed by the jury is not excessive simply because it is the maximum fixed by law. But for the error herein mentioned, we would not even mention the sentence. However, the fact that the sentence is neither excessive nor unusual is not the question presented here. *The question is whether we can say that the challenged evidence was harmless beyond a reasonable doubt.* *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Wilder v. State*, 583 S.W.2d 349 (Tex.Cr.App.1979).

Our record does not contain any *proof* from any source that appellant had any prior criminal record. Notwithstanding the allegation in the enhancement paragraph of the indictment, the State made no effort to prove the truth thereof.

Yet, State's counsel went to great lengths to persuade the trial judge to admit testimony from the federal probation parole officer, Flanagan, as to appellant's reputation. Flanagan's answer in the presence of the jury that he had "been provided with information with regard to his past reputation" served to alert the jury to the source of such information: official federal government evidence.

Although State's counsel points to the finding of harmless error in *Mitchell v. State*, supra, no mention is made of the caveat of Presiding Judge Onion in his concurring opinion that the majority opinion in *Mitchell* should not be interpreted "as meaning that in any case the State is entitled to one free unqualified reputation witness ...." (524 S.W.2d at 516)

Under the facts of this case, we cannot conclude that there is no possibility that the erroneous admission of testimony of appellant's bad reputation did not contribute to the punishment assessed. Therefore, as was said in *Jordan v. State*, supra (576 S.W.2d at 830):

"[W]e are unable to say that this error was harmless beyond a reasonable doubt *on the issue of punishment.*

"Since the punishment was assessed by the jury in this cause, and this case cannot be reversed solely upon the issue of punishment, the judgment of conviction is reversed, and a new trial is ordered."

It is so ordered. REVERSED and REMANDED.